UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KERRI MATTHEWS, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. H-09-cv-609 |
| | § | |
| GOVERNMENT EMPLOYEES INSURANCE | § | |
| COMPANY (GEICO), | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Pending before the Court is the defendant's, Government Employees Insurance Company ("GEICO"), motion for summary judgment and brief in support of its motion for summary judgment (Docket Entry Nos. 22 and 23).  The plaintiff, Kerri Matthews ("Matthews"), has filed a response and brief in support of her response to GEICO's motion for summary judgment (Docket Entry Nos. 25 and 26).  Also pending before the Court are GEICO's objections to and motion to strike certain statements contained in Matthews' summary judgment declaration (Docket Entry No. 28) and Matthews' response (Docket Entry No. 36).  After having carefully considered the parties' submissions, the record, the undisputed facts and applicable law, the Court determines that GEICO's motion for summary judgment should be GRANTED; and its motion to strike certain objectionable statements contained in Matthews' declaration should be GRANTED in part and DENIED in part.

## II.   FACTUAL BACKGROUND

Matthews was employed by GEICO from January 24, 2005 to December 20, 2007.  At the time of her initial hire, she began working as an auto damage adjuster in GEICO's San

Antonio field office.  In January of 2006, she was promoted to a supervisor-in-training position. Several months thereafter, she applied for a field supervisor position for auto damage adjusters in GEICO's Houston office.  Matthews interviewed with and was selected for the position by Houston Auto Damage Manager Curtis Clark ("Clark").  Consequently, in August/September of 2006, Matthews, her husband and her two children moved from Pearsall, Texas to Bellville, Texas and she began working in GEICO's Houston office, with Clark as her immediate supervisor.  She moved to Bellville rather than Houston in order to satisfy certain residency requirements for her husband's job.  After informing Clark of such residency requirements, he assigned her to GEICO's west Houston territory, which was closer to the area where she resided. According to Matthews, of the five to six auto damage field supervisors that Clark managed, she was the only female supervisor.

In September of 2007, Matthews alleges that Clark informed her that she would no longer work in the field conducting re-inspections or ride interviews, effective October 1, 2007.  She asserts that she was the only field supervisor upon which such restrictions were placed.  She contends that none of the male field supervisors received such restrictions.

GEICO alleges that, while working as an auto damage field supervisor, Matthews exhibited some performance problems, namely she failed to properly manage her adjusters, failed to timely follow-up on issues and claims and failed to timely respond to internal and external telephone calls and messages.  It asserts that she was repeatedly counseled by Clark relative to these and other performance issues.  In fact, one such counseling session took place the week of October 15 - 19, 2007.

Specifically, during a meeting between Matthews and Clark in Clark's office the week of October 15, 2007, Matthews alleges that Clark yelled and cursed at her, clenched his fists and

threw a file onto his desk.  She asserts that she pleaded with him to stop yelling at her, informing him that associates and dispatchers outside the door could hear him.  On November 5, 2007, she contacted Ty Gammill ("Gammill"), GEICO's Regional Auto Damage Director and Clark's immediate supervisor, via telephone, and informed him that Clark had lost his temper, yelled at her and hit his fists on his desk.  She also advised Gammill that she did not want to make a big deal of the matter and did not want him to contact Clark about the incident because she did not want to get Clark in any trouble.  In response, Gammill advised her that since she had reported the matter to him, he felt it necessary to have a discussion with Clark in regards to what she had alleged.  When questioned, Clark denied the allegations and no further action was taken.

On December 18, 2007, Clark again met with Matthews to discuss her continuing performance issues, specifically her failure to:  promptly return phone calls and messages; timely complete requested assignments; properly supervise her adjusters; and timely review requests by her adjusters for supplemental payments on auto damage claims.  Notably, during this time, Clark discussed Matthews' handling of a particular claim.  He informed her that she had failed to properly oversee one of her adjusters and as such, an individual claimant remained in a rental car in excess of GEICO's 30-day maximum rental period at a cost of $4,500.  Clark advised that it appeared that Matthews had tried to cover-up her mismanagement of this claim by adding the outstanding rental costs to the amount already approved for the claimant's property damage claim, which exceeded the claim authority given to her, absent management approval.  Although Matthews had indicated in GEICO's electronic claims management system that she had received approval from Clark to issue payment on this claim, Clark stated that he had never discussed payment relative to this claim with her and as such, had never given her his approval for the issuance of payment on the claim.  At the end of the meeting, Clark informed Matthews that her

actions had raised some serious ethical concerns and could possibly result in disciplinary actions being taken against her, including her losing her job.  Nevertheless, he further advised her that he would need to consult with Gammill before any decision could be made regarding the issue. Later that day, Clark had a telephone conference with Gammill, GEICO's Human Resource Director, Debra Smith ("Smith"), and its Assistant Vice-President, Suzanne Worthen ("Worthen"), concerning Matthews' performance issues, including her mishandling of the aforementioned claim.  It was agreed that disciplinary action in the form of a written warning should be issued to Matthews.

Before the written warning could be issued, however, GEICO contends that Matthews exacerbated the situation by:  (1) disclosing certain information about her performance problems as well as her prior meeting with Clark to two of her subordinate dispatchers, Sandy Caban ("Caban") and Annette Ortiz ("Ortiz"); and (2) lying about her conversations with Caban and Ortiz to GEICO's management.  On December 19, 2007, Clark, along with Smith, Gammill and Worthen, met with Matthews and informed her that she was being demoted from her auto damage supervisor position to an auto damage adjuster position for disclosing certain information to Caban and Ortiz and lying about doing so, causing concern as to her honesty and integrity.  Before the meeting concluded, Smith stated that she directed Matthews to keep her demotion and related conversations confidential and that employees would be advised that she stepped down rather than received a demotion.

GEICO contends that despite its directive, Matthews informed Caban and Ortiz that she had been demoted and asked them to deny ever having discussed the matter with her, should management ask.  Thereafter, Caban and Ortiz informed both Clark and Smith, by telephone and e-mail, concerning the nature of their conversations with Matthews.  This information prompted

another meeting with Matthews and GEICO's management on December 20, 2007.  During this meeting, Smith inquired as to whether Matthews had again spoken with Caban and Ortiz following the December 19, 2007 meeting with them and whether she had asked Caban and Ortiz to deny having spoken with her regarding the meeting.  Smith contends that Matthews acknowledged that she had spoken to Caban and Ortiz again.  Consequently, she alleges that she asked for Matthews' resignation from GEICO.

Subsequently, on January 13, 2009, Matthews commenced the instant action against GEICO, alleging claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.051.  GEICO now moves for summary judgment on Matthews' claims.

## III.     CONTENTIONS OF THE PARTIES

### A.     GEICO's Contentions

GEICO argues that it is entitled to summary judgment on Matthews' claims of sex discrimination and retaliation because she cannot establish a *prima facie* case.  It contends that Matthews was demoted for lying to her supervisors about whether she discussed her performance problems and details relative to a prior meeting with Clark with two of her subordinates.  It also contends that it requested her resignation when she disobeyed a confidentiality directive, informed the two subordinates of her demotion and then asked the subordinates to lie for her and to deny that she discussed her performance problems as well as her prior meeting with Clark with them.  As a consequence, it avers that there is no evidence that Matthews' demotion was based on her sex or that she was treated less favorably than any similarly situated employee outside her protected class.  Further, GEICO asserts that there is no evidence that its request for

her resignation was based on her sex.  Finally, it argues that Matthews cannot establish a case of retaliation because she did not engage in a protected activity and without such, there is no causal connection to her demotion or to GEICO's request for her resignation.

### B.    Matthews' Contentions

In response, Matthews argues that GEICO is not entitled to summary judgment on her claims because she has established a *prima facie* case of sex discrimination and retaliation under Title VII and the TCHRA.  With regard to her claim of sex discrimination, she contends that the summary judgment evidence clearly establishes that:  (1) she was qualified for the position she held at the time of her demotion and resignation; (2) she suffered an adverse action; and (3) she was replaced by a person outside her protected class.  With respect to her claim of retaliation, she argues that the summary judgment evidence clearly establishes that she engaged in a protected activity on November 5, 2007, when she complained to Gammill regarding Clark's outburst in October of 2007 and his sexist comments regarding the fact that she had two young children. She further asserts that the adverse actions taken against her by GEICO were in close proximity to her protected activity and that the two people responsible for taking such adverse actions were aware of her complaint concerning Clark.  Finally, she maintains that GEICO's articulated reasons for demoting her and subsequent demand for her resignation are inconsistent, false and a mere pretext for discrimination and retaliation against her.

## IV.    STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of "informing the Court of the basis

of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c), (e)).

In adjudicating a motion for summary judgment, a court is required to view all facts in the light most favorable to the nonmoving party and any inconsistencies are to be resolved in the nonmoving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). During this time, a court must also look to the substantive law underlying the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he substantive law will identify which facts are material." *Id.* "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251 - 52).

A court reviewing a motion to summary judgment is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)). However, "a plaintiff cannot establish a genuine issue of material fact by resting on the mere allegations of [his] pleadings." *Russell v. Harrison*, 736 F.2d 283, 287 (5th

Cir. 1984).  "On the contrary, 'once defendants have made . . . sworn denials, summary judgment is appropriate unless [a] plaintiff can produce *significant evidence* demonstrating the existence of a genuine fact issue."  *Id.* (citation omitted) (emphasis in original).

## V.    ANALYSIS & DISCUSSION

### A.    Evidentiary Objections:  GEICO's Motion to Strike

GEICO makes specific objections to Matthews' declaration filed in opposition to its motion for summary judgment, seeking to strike specific statements contained in her declaration on the grounds that such statements contain impermissible opinion testimony, are not based on her personal knowledge, lack foundation, are speculative and/or contain hearsay.  The precise statements objected to are detailed in GEICO's objections and motion to strike filed as Docket Entry No. 28.  GEICO also objects to and moves to strike Matthews' statement contained on page 5, ¶ 2, of her declaration which provides:  "I also told Mr. Gammill about Mr. Clark having also told me that since I was the mother of two young children with a husband who worked out of town that I may want to reconsider my job at GEICO."  It argues that this statement contradicts Matthews' prior statements and sworn deposition testimony, without explanation, and constitutes incompetent summary judgment evidence.

It is well-settled law that "[e]vidence inadmissible at trial cannot be used to avoid summary judgment."  *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (quoting *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976)).  In this regard, an affidavit or declaration submitted for summary judgment purposes must be based on the affiant and/or declarant's personal knowledge and unsubstantiated assertions or statements containing hearsay are to be disregarded as incompetent summary judgment evidence.  *See*, *e.g.*, *Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. Unit A July 30, 1981) (holding that an affidavit for summary

judgment purposes must be based on the affiant's personal knowledge); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (reasoning that "unsubstantiated assertions are not competent summary judgment evidence"); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (reasoning that hearsay statements in an affidavit proffered to defeat summary judgment were "incompetent summary judgment evidence").   Moreover, while affidavits or declarations filed in opposition to a motion for summary judgment may be offered to supplement deposition testimony, they may not be tendered to contradict prior sworn testimony, without explanation. See *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (reasoning that "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")

This Court has reviewed each of the objections lodged by GEICO and sustains the following objections:   on page 3, ¶ 1, Matthews' statement that "[t]he Southwest team of adjusters had a history of the highest severity (i.e., very expensive vehicles such a Mercedes Benz and other high dollar vehicles that cost more to repair than less expensive vehicles) and had the most problem shops";   on page 3, ¶ 2, Matthews' statement that "I was the only Auto Damage Field Supervisor upon whom such restrictions were placed.   All of the other Auto Damage Field Supervisors were men and they were not placed on such restrictions"; on page 5, ¶ 2, Matthews' statement that "I also told Mr. Gammill about Mr. Clark having also told me that since I was the mother of two young children with a husband who worked out of town that I may want to reconsider my job at GEICO"; on page 7, ¶ 2, Matthews' statement that "[w]hen the dispatchers noticed me crying, . . . .;   on page 9, ¶ 2, Matthews' statement that "I misunderstood Ms. Smith's earlier question . . . ."; on page 9, ¶ 2, Matthews' statement that "[a]t no point that day or on any other day did I tell Annette Ortiz or Sandy Cuban to 'lie' for me or for either of

them to 'deny' ever having the conversation with me regarding my December 18, 2007 meeting"; and on page 9, ¶ 2 – page 10, ¶ 1, Matthews' statement that "[i]t makes absolutely no sense for me to have made such a statement or made such a request to Annette Ortiz or Sandy Caban  . . . ."  Only these portions of Matthews' declaration are to be stricken; GEICO's remaining objections are overruled and its motion to strike is otherwise DENIED.  The Court will consider the admissible portions of Matthews' declaration in determining whether GEICO's motion for summary judgment should be granted or denied.  *See Williamson v. U. S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (noting that "on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motions.")

### B.    Matthews' Claim for Sex Discrimination Under Title VII

Matthews contends that GEICO unlawfully discriminated against her in violation of Title VII and the TCHRA[1] when it demoted her and subsequently requested that she resign on December 20, 2007.  Title VII forbids an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  In employment discrimination cases, such as the one *sub judice*, discrimination under Title VII may be proven through either direct or circumstantial evidence.  *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th

---

[1]  Although Matthews brings her discrimination claims pursuant to Title VII and the TCHRA, this Court will not analyze her TCHRA claims separately and will refer only to Title VII in its Memorandum Opinion and Order, since "the law governing claims under the TCHRA and Title VII is identical."  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 n.10 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999)).

Cir. 2003)).  The Fifth Circuit has held that in cases where no direct evidence[2] of discriminatory

intent has been produced, proof by means of circumstantial evidence must be evaluated using the

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93

S. Ct. 1817, 36 L. Ed.2d 668 (1973).  *See Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th

Cir. 2007) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001)); *see also*

*Turner*, 476 F.3d at 345 (citing *Rutherford v. Harris County*, 197 F.3d 173, 179 – 80 (5th Cir.

1999).

Under the *McDonnell Douglas* burden-shifting framework, the Fifth Circuit has restated

the test as follows:

> [A] plaintiff must first create a presumption of intentional discrimination by
> establishing a *prima facie* case.  The burden then shifts to the employer to
> articulate a legitimate, nondiscriminatory reason for its actions.  The burden on
> the employer at this stage is one of production, not persuasion; it can involve no
> credibility assessment.  If the employer sustains its burden, the *prima facie* case
> is dissolved, and the burden shifts back to the plaintiff to establish either:  (1) that
> the employer's proffered reason is not true but is instead a pretext for
> discrimination; or (2) that the employer's reason, while true, is not the only reason
> for its conduct, and another motivating factor is the plaintiff's protected
> characteristic.

*Alvarado*, 492 F.3d at 611 (citations and internal quotation marks omitted); *see also Turner*, 476

F.3d at 345 (internal citations omitted); *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th

Cir. 2005) (internal citations omitted).  "A plaintiff may establish pretext either through evidence

of disparate treatment or by showing that the employer's proffered explanation is false or

'unworthy of credence.'"  *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 220; *Reeves v.

Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed.2d 105

(2000)).  "Although intermediate evidentiary burdens shift back and forth under [the *McDonnell*

---

[2] "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *See Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)).

*Douglas*] framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143, 120 S. Ct. at 2106 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)).

### 1.     Matthews' *Prima Facie* Case of Sex/Gender Discrimination

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must demonstrate that:  "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action; and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 -13 (5th Cir. 2001)); *see also Septimus*, 399 F.3d at 609.

Here, GEICO denies that Matthews has established a *prima facie* case of discriminatory termination, asserting that there is no evidence in this case that it treated Matthews less favorably than any similarly situated employee outside her protected class.[3]   Contrary to GEICO's assertions, however, in this pretext case, Matthews need not prove that a similarly situated employee outside her protected class was treated more favorably by GEICO, but rather that she was replaced by a similarly qualified person outside her protected class.  *Id.*  Accordingly, this Court determines that Matthews has established a *prima facie* case of discriminatory termination or discharge, as the summary judgment evidence establishes that Matthews:  (1) is a member of a

---

[3] GEICO also argues that Matthews cannot establish a *prima facie* case of sex discrimination because there is no evidence that it demoted her or asked for her resignation based on her sex.  (*See* Docket Entry No. 23 at 15). However, at the initial stage of the *McDonnell Douglas* burden-shifting framework, the law imposes no such requirement on Matthews.  *Nasti*, 492 F.3d at 593; *see also Septimus*, 399 F.3d at 609.

protected class; (2) was qualified for her position as an auto damage supervisor as evidenced by her performance appraisals; (3) suffered an adverse employment action when she was demoted on December 19, 2007, and forced to resign on December 20, 2007; and (4) was replaced by Shawn Miller, a male employee outside her protected class.  Because the Court determines that Matthews has satisfied her initial burden of establishing a *prima facie* case of sex discrimination, the burden now shifts to GEICO "to articulate a legitimate, nondiscriminatory reason for its [adverse employment] actions."  *Alvarado*, 492 F.3d at 611 (internal citations omitted); *see also Turner*, 476 F.3d at 345 (internal citation omitted); *Septimus*, 399 F.3d at 609 (internal citations omitted).

### 2.    GEICO's Legitimate, Nondiscriminatory Reason for Termination

GEICO has articulated a legitimate, non-discriminatory reason for demoting Matthews and thereafter requesting her resignation:  Matthews was demoted on December 19, 2007, for disclosing certain information to two of her subordinate dispatchers and lying about her disclosure to GEICO's management, namely Gammill, Smith, Worthen and Clark; and her resignation was requested on December 20, 2007, when she disobeyed Smith's directive to keep her demotion and related conversations confidential and requested that two of her subordinates lie for her.  GEICO's articulated legitimate, non-discriminatory reason satisfies its burden at this stage "as [its burden] 'is one of production, not persuasion . . . [and] can involve no credibility assessment.'"  *Rios v. Rossotti*, 252 F.3d 375, 379 (5th Cir. 2001) (quoting *Reeves*, 530 U.S. at 142, 120 S. Ct. at 2106).  To this end, "[GEICO] need only articulate a lawful reason, regardless of what its persuasiveness may or may not be."  *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993).  As such, this Court must now ascertain whether Matthews has met her

burden of demonstrating that GEICO's articulated reasons for demoting her and thereafter requesting her resignation were merely pretexts for sex discrimination.

### 3.    Matthew's Proffered Evidence of Pretext for Sex Discrimination

"In order to rebut a defendant's showing of legitimate, nondiscriminatory reasons for its actions, '[i]t is not enough . . . to *dis* believe the employer.'"   *Warren v. City of Tupelo Mississippi*, No. 08-60916, 2009 WL 1560022, * 4 (5th Cir. June 3, 2009) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519, 113 S. Ct. 2742, 125 L. Ed.2d 407 (1993) (emphasis in original)).   Rather, "the factfinder must *believe* the plaintiff's explanation of intentional discrimination."   *Id.*   In other words, "what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that [sex] discrimination was the real reason for [the plaintiff's] discharge.'"   *Levias v. Texas Dep't of Criminal Justice*, 352 F. Supp.2d 751, 769 (S.D. Tex. 2004) (citing *Reeves*, 530 U.S. at 153, 120 S. Ct. at 2112) (quoting the district court's jury instructions as properly stating the law)).   "The Supreme Court clarified in *Reeves* that, to meet this burden, 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'"   *Levias*, 352 F. Supp.2d at 769 (quoting *Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109).

"This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."   *Reeves*, 530 U.S. at 148, 120 S. Ct. at 2109 (emphasis in original). "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and

there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* (citing *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1291 – 1292 (D.C. Cir. 1998) (en banc); *see also Fisher v. Vassar College*, 114 F.3d 1332, 1338 (2nd Cir. 1997) (en banc) ("[I]f the circumstances show that the defendant gave the false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent")).

Here, Matthews contends that she has presented sufficient evidence to establish that the reasons proffered by GEICO for its adverse employment actions against her are mere pretexts for sex discrimination.  As a threshold matter, she attempts to establish pretext by asserting that the close temporal link between her protected activity (i.e, her complaint to Gammill on November 5, 2007) and GEICO's adverse employment actions against her (i.e., her demotion and termination on December 19 and 20, 2007, respectively) demonstrates pretext.  This Court disagrees, as the mere temporal proximity of a plaintiff's protected activity and an employer's alleged adverse actions, without more, is insufficient to prove pretext and satisfy the third stage of the *McDonnell Douglas* burden-shifting framework, absent some independent evidence that casts doubt upon the employer's stated reasons for its actions.  *See Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993); *Stevens v. St. Louis Univ. Med. Ctr.*, 97 F.3d 268, 272 (8th Cir. 1996) (reasoning that the inference to be drawn from the temporal connection between a plaintiff's protected activity and an employer's adverse actions is not alone sufficient to prove pretext and satisfy the third stage of *McDonnell Douglas* framework); *Oliver v. Sheraton Tunica Corp.*, No. CIV. A. 398CV203-D-A, 2000 WL 303444 (N. D. Miss. March 8, 2000) (noting that temporal proximity "is generally insufficient to overcome a defendant's proffered legitimate, non-discriminatory reason for an adverse employment decision.")  Matthews has tendered no

such proof in this case, other than her own subjective belief, which is of little value and is not enough to support an inference of pretext.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (reasoning that an employee's subjective belief that she suffered an adverse action as a result of discrimination, by itself, is insufficient to withstand summary judgment in light of evidence establishing an adequate nondiscriminatory reason); *see also Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993) (noting that the subjective opinions of the plaintiff and others, without supporting evidence, are insufficient to establish pretext).

Next, Matthews argues that GEICO's decision to disregard its usual policies and procedures when conducting its investigation relative to her complaint against Clark demonstrates that its articulated reasons for demoting her and subsequently requesting her resignation are pretexts for sex discrimination.  Specifically, she asserts that GEICO's own Human Resources Director, Smith, testified that her allegations against Clark were serious and should have been investigated and handled by GEICO's Human Resources Department and not by Gammill.  According to Matthews, Gammill failed to disclose the full extent of her complaint to either Smith or Worthern, his direct supervisor.

The Court finds Matthews' argument in this regard unavailing and insufficient to establish pretext in light of the overwhelming evidence to the contrary contained in the record. While it is true that GEICO failed to follow its usual policies and procedures when conducting an investigation relative to Matthews' complaint concerning Clark, it appears that GEICO's deviation from its normal protocol may have occurred at Matthews' insistence.  More specifically, according to the evidence contained in the record, when Matthews telephoned Gammill around November 5, 2007, to complain about Clark's behavior during a meeting he had

with her in October of 2007, she requested that he not contact Clark regarding her complaint because she did not want to get Clark in trouble.  (*See* Docket Entry No. 27, Ex. 2 at 73:13 – 75:20.)  Notably, Gammill testified that Matthews' call was rather odd, but that her demeanor was calm and she was not upset.  (*Id.*)  He stated that she informed him "that she had had a conversation with Mr. Clark and that he had lost his temper and he raised his voice, [hit] his fist on the table, and that she did not really want [Gammill] to call him.  She didn't want to get him in trouble.  She thought maybe he was having a bad day, but just thought [Gammill] should know about it."  (*Id.*, Ex. 2 at 73:16 – 22).  Gammill recalled that, during their telephone conversation, Matthews made no mention of Clark saying anything about her children other than that she had mentioned to him that "[s]he was having problems getting daycare for her children. . . . And [Clark] said, it's a personal issue, and it's affecting your work, and you need to be able to find day care to do your job."  (*Id.*, Ex. 2 at 75:2 – 16).  Gammill also testified that in response to Matthews' call, he advised her that "since she'd reported [the matter] to [him], [he] needed to have a discussion with Mr. Clark in regards to what she was saying."  (*Id.*, Ex. 2 at 76:16 – 20).  He contends that Matthews responded by saying, "Okay."  (*Id.*)

He further testified that other than discussing the matter with Matthews and Clark, he did not talk to anyone else about Matthews' complaint, until he received a telephone call from Matthews' husband, Wayne Matthews ("Mr. Matthews"), regarding the matter.  (*Id.*, Ex. 2 at 81:3 – 23; 89:11 - 90:8).  He stated that this telephone call prompted him to discuss the matter with Smith, to determine whether he was obligated to discuss Matthews' complaint concerning Clark's behavior with Mr. Matthews.  (*Id.*, Ex. 2 at 90:5 – 23).  He testified that after discussing the matter with Smith, it was decided that he did not have any obligation to discuss the matter with Mr. Matthews because he was not a GEICO employee and the issue was between

Matthews' and GEICO. (*Id.*)   Gammill further testified that he advised Mr. Matthews that if Matthews had any further complaints that she needed to speak with either him, Smith "or go through the ethics—ethics line complaint."   (*Id.*, Ex. 2 at 90:22 – 91:3).

Matthews' characterization of Smith's testimony also falls short of the pretextual mark. Specifically, Smith testified that Gammill informed her that "[Matthews] said that Curtis had yelled at her in a meeting on one occasion and that . . . [he] asked [her] if it had ever happened before, and she said no." (Docket Entry No. 27, Ex. 4 at 89:25 – 90:9).   She further stated that according to Gammill, "[Matthews] begged [him] . . . not ---to please don't say anything to [Clark]. She was just venting to [Gammill]. And [Gammill] said that he had to say something to [Clark] as a matter of protocol."   (*Id.*)   An examination of her testimony also suggests that she found no problem with Gammill's handling of Matthews' complaint in this regard.   (*Id.*, Ex. 4 at 90:10 – 101:11).   When asked during her deposition, however, if it would be a serious allegation if Gammill were told by Matthews that, during their meeting, Clark "cursed and clenched his fist and threw an object at [her], Smith responded by saying, "if this is what [Gammill] was told, then, yes, it would be a serious allegation" and human resources should have been notified.   (*Id.*, Ex. 4 at 102:15 – 103:16).

Worthen's deposition testimony further substantiates the relevant portions of Gammill's testimony concerning the nature of Matthews' complaint to him regarding Clark.   (*See* Docket Entry No.27, Ex. 3 at 42:15 – 43:1).   According to Worthen, Gammill informed her that he had received a phone call from Matthews informing him that Clark had raised his voice and that he might have been upset.   (*Id.*)   She further stated that Gammill advised her that Matthews did not want to make a big deal of it.   (*Id.*)

Even Matthews' *own* rendition of what occurred during her meeting with Clark the week of October 15, 2007, as stated in her deposition, generally supports Gammill's contentions regarding the nature of her complaint to him about Clark's behavior and is insufficient to establish pretext.  Particularly, Matthews testified in her deposition, that "[Clark] yelled that '[y]ou may talk to your husband this way, you may talk to Stephan Sear that way, but you're not going to talk to me that way.  I'm your manager.' . . . 'I'm your manager.'"  (Docket Entry No. 24, Ex. 1 at 143:5 – 22).  She also stated that he "[c]lenched his fists. . . . [and] threw a file on the desk."  (*Id.*, Ex. 1 at 143:24).  She testified that based on what she had seen previously, this was out of character for Clark.  (*Id.*, Ex. 1 at 147:5 - 7).  She further testified that "[Clark] also spoke to [her] about her children on that one occasion, but it was nothing offensive or out of line I don't think, other than, '[h]ere I am trying to help you with your kids.' " (*Id.* at 147;14 – 17).  She also mentioned that "[she didn't] think [she] ever said [that Clark] threw things at [her]."  (*Id.*, Ex. 1 at 227:7 - 23).

Nevertheless, assuming, *arguendo*, that GEICO failed to follow its standard policies and procedures when investigating Matthews' complaint, notwithstanding her insistence that Clark not be notified or "placed in trouble," case law in the Fifth Circuit makes clear that "an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual."  *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996) (citing *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989) (other citation omitted)).  In this case, Matthews has also not set forth any evidence that would create a discriminatory nexus between GEICO's failure to follow its standard policies and procedures and her gender.  Moreover, her position is further undermined by the fact that two of the decision makers involved in GEICO's

decisions to demote her and ask for her resignation, namely Smith and Worthen, are members of her protected class—giving rise to an inference that GEICO did not have a general aversion to female employees as Matthews insinuates.  Without more, GEICO's failure to follow its usual protocol with regard to its investigation of Matthews' complaint is insufficient to establish that its articulated reasons for demoting and discharging her were a pretext for sex discrimination, especially in light of the fact that Matthews has failed to tender any evidence suggesting that complaints in this regard when made by individuals outside her protected class were handled differently.

As further evidence of GEICO's discriminatory motive and gender-based animus, Matthews contends that GEICO has offered inconsistent reasons for demoting and discharging her, which demonstrate that its proffered reasons are pretexts.  (*See* Docket Entry No. 26 at 20).  She argues that GEICO's position with regard to its reasons for her demotion and resignation have varied over time.  First, she contends that in GEICO's appeal relating to Matthews' unemployment compensation, GEICO stated that Matthews was discharged for "disclos[ing] information to coworkers after being written up."  (Docket Entry No. 27, Exhibit 6 at 170).  Second, she argues that in an e-mail from Clark dated December 21, 2007, Clark stated that she was demoted for performance related reasons and not for disclosing information to co-workers.  (*Id.*, Ex. 5 at 148).  Finally, she alleges that in GEICO's response to the EEOC, GEICO advised that she was demoted for disclosing confidential information to two dispatchers as well as for ongoing performance reasons.  (*Id.*, Ex. 4 at 102).

Even accepting Matthews' allegations as true in that somewhat of a discrepancy exists regarding GEICO's proffered reasons for her demotion and resignation, Matthews has not made the requisite showing that GEICO's explanation for her demotion and forced resignation was

false.  *See Reeves*, 530 U.S. at 144, 120 S. Ct. at 2107.  She has also failed to produce sufficient evidence from which a reasonable jury could conclude that GEICO intentionally discriminated against her on the basis of her sex.  "Where [as here] the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate."  *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 120, 2003 WL 21754966, *6 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 1415 (2004) (citing *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 385 (5th Cir. 2003); *Sandstad*, 309 F.3d at 894; *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996)).  Therefore, this Court concludes that Matthews has not made the required showing that GEICO's proffered reasons are so inconsistent as to raise a material issue of fact as to whether its decisions to demote her and subsequently request her resignation were pretexts for sex discrimination in this case.

Lastly, in addition to the allegations mentioned above, Matthews appears to suggests that certain remarks made by Clark during her meeting with him on December 18, 2007, denote that GEICO's concern relative to her job performance was not legitimate and was a mere pretext to discriminate against her because of her sex.  Specifically, she alleges that during this meeting, "Clark told [her] that he wanted to talk to [her] about her personal life."  (Docket Entry No. 1, Ex. B at 4; *see also* Docket Entry No. 24, Ex. 1 at 221:24 – 222:9; Docket Entry No. 24, Ex 1 at Ex. 30).  She contends that "Clark proceeded to tell [her] that he knew that [she] had a hard time since [her] husband . . . lived out of town and [she] had two small children."  (*Id.*)  She further asserts that "Clark went on to say that [her] job was not suited [for] everyone and that it was not an 8 to 4:30 type of job." (*Id.*)

The Fifth Circuit has reasoned that "[m]ere stray remarks, however distasteful, do not demonstrate discriminatory animus." *Read*, 72 Fed. Appx. at 120 (citing *Texas Instruments*, 100 F.3d at 1181).  Such "remarks may serve as sufficient evidence of . . . discrimination if the offered comments are: 1) [gender] related; 2) proximate in time to the [adverse employment actions]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007) (citing *Brown*, 82 F.3d at 655 (internal quotation and citations omitted)).  "In order for [a gender]-based comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that [gender] was an impermissible factor in the decision to terminate the employee." *Texas Instruments*, 100 F.3d at 1181 (citing *Bodenheimer*, 5 F.3d at 958).  The statements allegedly made by Clark to Matthews do not meet these requirements and constitute nothing more than stray remarks.

Although the aforementioned remarks have been attributed to Clark, an individual with some authority over decisions affecting Matthews' employment with GEICO, no evidence has been presented in this case to establish that any of the remarks were related to Matthews' demotion or resignation in any way.  Additionally, the remarks are neither direct or unambiguous nor are they indicative of gender bias or discriminatory animus.  At best, Clark's remarks merely acknowledge his awareness of Matthews' role as the primary caregiver for her children, given her husband's job relocation, and the general demands associated with her "parenting" status--an observation which falls short of the evidence needed to permit an inference that gender was a determinative factor in GEICO's decision to demote her and request her resignation.  These remarks, without more, do not suggest a bias or animosity towards working mothers or female

caregivers, as they could likewise apply to working fathers or male caregivers. *See Samuels v. City of Baltimore*, Civil No. RDB 09-458, 2009 WL 3348134, *6 (D. Md. Oct. 15, 2009) (rejecting male employee's gender discrimination claim where he failed to present evidence that he was treated differently than female caregivers employed by the employer). Further, GEICO has tendered evidence that Clark did not make the ultimate decision to demote Matthews or to request her resignation. According to sworn testimony contained in the record, both of those decisions were made by Gammill, Smith and Worthen. (*See* Docket Entry No. 24, Ex. 4 at 133:9 – 23; 135:22 – 24; 145:5 – 146:3; *see also* Ex. 8.) Though the record does establish that Clark actively participated in the meetings relative to Matthews' demotion and resignation, no summary judgment evidence has been presented demonstrating that Clark "possessed leverage, or exerted influence, over the titular decisionmaker[s]" so as to cause his alleged remarks to be attributed to them. *Arismendez*, 493 F.3d at 608 (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000)).

　　　　Further, the Fifth Circuit has cautioned that "Title VII is not a general civility code for the American workplace." *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 118 S. Ct. 998, 140 L.Ed.2d 201 (1998)). To this end, "'simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges' that can survive summary judgment." *Turner*, 476 F.3d at 348 (citing *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004)). Having fully examined the evidence set forth in the record, the Court concludes that Matthews has provided no evidence to diminish the veracity of GEICO's position in this case or demonstrate a causal connection between its adverse employment actions against her and her gender. Thus, the evidence presented by Matthews to rebut the non-discriminatory

reasons offered by GEICO, "is not so persuasive so as to support an inference that the real reason [for her demotion and resignation] was [sex] discrimination." *Rubinstein v. Admin'rs. of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000).

### C.    Matthews' Claim of Retaliation Under Title VII

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against" an employee for opposing an unlawful practice or asserting a charge, testifying, assisting, or participating in a Title VII proceeding or investigation. *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405, 2410 (2006) (citing 42 U.S.C. § 2000e-3(a)); *see also Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). To establish a *prima facie* claim of retaliation under Title VII, a plaintiff must illustrate that: "(1) she engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348 (citing *Fabela*, 329 F.3d at 414)). "Under Title VII, an employee has engaged in protected activity if she has 'opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)].'" *Turner*, 476 F.3d at 348 (quoting 42 U.S.C. § 2000e-3(a)). "To satisfy the opposition requirement, [the plaintiff need not establish that her employer's practices were actually illegal or unlawful, but] need only show that she had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Turner*, 476 F.3d at 348 (quoting *Byers v. Dallas Morning News*, 209 F.3d 419, 428 (5th Cir. 2000)).

As support for her claim that she engaged in "protected activity" within the meaning of Title VII, Matthews, in her response in opposition to GEICO's motion for summary judgment, alleges for the very first time that she complained to Clark's supervisor, Gammill, on November 5, 2007, "concerning the fact that Mr. Clark had made, inappropriate, sexist comments about her

small children and whether [she] as a mother should reconsider her position at GEICO." (Docket

Entry No. 26 at 16.)  She also alleges that she "complained to [Gammill] concerning Mr. Clark's

outburst [during] their October meeting." (*Id.*)  Lastly, she alleges that she "complained to

[Gammill] regarding the fact that Mr. Clark treated [her] differently than the male Auto Damage

Field Supervisors insofar as not allowing [her] to work outside of the Houston office." (*Id.* at 16

- 17).  As support for these contentions, Matthews tenders her own declaration, which appears to

contradict her prior statements as well as her deposition testimony, without explanation.

Prior to filing her declaration, however, Matthews consistently maintained that during her

meeting with Clark the week of October 15, 2007, Clark yelled at her, clenched his fists and

threw a file on the desk. (*See* Docket Entry No. 24, Ex. 1 at 143:5 – 24).  She also maintained

that she reported his behavior in this regard to Gammill on November 5, 2007. (*Id.*, Ex. 1 at

152:22 – 153:8).  In her statements supporting her administrative complaint to the EEOC,

Matthews discussed in detail and at length her relationship with Clark, her October 2007 meeting

with Clark as well as her complaint to Gammill on November 5, 2007, concerning Clark's

behavior. (*See* Docket Entry No. 24, Ex. 1 at Exs. 30, 31).  With regard to her complaint to

Gammill concerning Clark, she confirmed that she merely explained to him "what [Clark] did

with his fists and how he yelled at [her]." (*Id.*)  At no time whatsoever did she ever mention that

during her October 2007 meeting with Clark, he made "inappropriate, sexist comments about her

small children and whether [she] as a mother should reconsider her position at GEICO." (*Id.*,

Ex. 1 at 143:17 - 153; Exs. 30, 31.)  In fact, when specifically questioned during her deposition

about any additional discussions that were held between her and Clark during the October 2007

meeting, she testified that "[Clark] also spoke to [her] about her children on that one occasion,

but it was nothing offensive or out of line I don't think, other than, '[h]ere I am trying to help

you with your kids.' " (*Id.*, Ex. 1 at 147:14 – 17).  She also made no mention of any alleged discrimination or unequal treatment.   (*Id.*, Ex. 1 at 152:2 – 153:10).

To the extent that Matthews' declaration conflicts with her deposition testimony as well as her previously-prepared statements, this Court will disregard it as it is insufficient to create a genuine issue of material fact adequate enough to refute GEICO's articulated legitimate, non-discriminatory reasons for her demotion and resignation, in light of the overwhelming evidence to the contrary.  *Turner*, 476 F.3d at 346 (citing *S.W.S. Erectors*, 72 F.3d at 495 - 96).  Because the Court determines that Matthews' complaint to Gammill concerning Clark did not oppose or protest against any illegal conduct based on her gender or reference any behavior that could even conceivably be perceived as discriminatory or otherwise prohibited under Title VII, her complaint cannot constitute "protected activity" sufficient to support a retaliation claim under Title VII.

Moreover, even assuming that Matthews' complaint to Gammill constituted "protected activity" sufficient to satisfy the first element of a *prima facie* case of retaliation, Matthews still fails to satisfy the third element of her *prima facie* case, namely that a causal connection existed between her complaint, her demotion and GEICO's request for her resignation.  Notably, she has failed to present evidence that the decisionmakers, specifically Gammill, Smith and Worthen, had actual or constructive knowledge that she engaged in "protected activity."  *See Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).  Further, she has not demonstrated that Clark's evaluation of her performance and GEICO's decisions regarding the same were the result of her engagement in such "protected activity."  Accordingly, GEICO is also entitled to summary judgment on Matthews' retaliation claim.

## VI.      CONCLUSION

Based on the foregoing discussion, GEICO's motion for summary judgment is GRANTED; and its motion to strike certain objectionable statements contained in Matthews' declaration is GRANTED in part and DENIED in part.

It is so **ORDERED**.

SIGNED at Houston, Texas this 23rd day of April, 2010.

_____
Kenneth M. Hoyt
United States District Judge